IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–03287–WJM–KMT

CARLOS R. HULL,

      Plaintiff,

v.

BEVERAGE DISTRIBUTORS COMPANY, LLC,
TOM ROGERS,
JOHN JOHNSON,
LINDA HOLLMAN,
TED HALLEY, and
BRYAN LEVINS,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Magistrate Judge Kathleen M. Tafoya**

      This matter is before the court on "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 42 [Mot. Dismiss], filed July 9, 2012) and "Defendants' Memorandum of Law in Support of Its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 43 [Mem.], filed July 9, 2012).

      Also before the court is "Plaintiff's Motion to Amend Original Complaint Pursuant to Fed. R. Civ. P. 15(a)(2)" (Doc. No. 65 [Mot. Amend], filed January 22, 2013). These motions are ripe for recommendation and ruling.

## FACTUAL BACKGROUND

District Judge William J. Martínez allowed Plaintiff to file his "Amended Complaint: Title VII Civil Rights Act of 1964 §2000e" (Doc. No. 40 [Am. Compl.], filed June 19, 2012), to to assert "a single claim for breach of contract under Colorado law." (Doc. No. 39, Order Overruling Pl.'s Objection and Affirming the Recommendation of the United States Magistrate Judge, and Granting Pl.'s Mot. For Leave to File an Am. Compl. [Judge Martínez's Order], filed June 19, 2012.) In his Amended Complaint, Plaintiff states he was "a professional contract employee in possession of a duly signed contract agreement between the Defendant Employer and Teamsters Local 455 of Denver, Colorado." (Am. Compl. at 2.) Plaintiff alleges on March 10, 2009, and shortly thereafter, he suffered two on-the-job injuries as a result of the "willful neglect of responsibility" of the defendants. (*See id* at 2–4.) Plaintiff was eventually allowed to return to light work duty. (*Id.* at 4.) Plaintiff alleges Defendant Rogers demanded that Plaintiff return to full duty or he would be fired. (*Id.*) Plaintiff's physician gave him a "second note returning [him] to full duty," and scheduled a follow-up appointment. (*Id.*) Plaintiff states he was unable to "perform at levels well above the expectations of others," so he began applying for other positions in the company. (*Id.*) Plaintiff states after months of attempts by Defendant Rogers to force him out of the company, Plaintiff filed a written complaint with the Human Resources director, Defendant Hollman, and "asked for a meeting with all parties present so we could set the record straight." (*Id.* at 5–6.) At the meeting, Plaintiff "stated his case" to Defendant Hollman, who shocked him by allegedly telling him, "Perhaps you should fire yourself! This may not be the right job for you." (*Id.* at 6–7.) On December 4, 2009, Plaintiff

2

arrived to work, and Defendant Rogers advised him his employment had been terminated.  (*Id.* at

7.)  Plaintiff alleges Defendants' failure to follow the collective bargaining agreement in their

treatment of him while he was employed and in their failure to provide a justifiable reason for his

termination is a breach of contract.  (*See id.* at 1–8.)

**LEGAL STANDARDS**

*1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines*, 404 U.S. at 520 (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations

without supporting factual averments are insufficient to state a claim upon which relief can be

based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may

not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has

violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc.*

*v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations

to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th

Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of

any discussion of those issues").

2.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss,

means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*.  The *Iqbal* evaluation requires two

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not

entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare

assertions, or merely conclusory. *Id*. at 1949–51.  Second, the Court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.  If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at

1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### 3.    *Amendment of Pleadings*

Because Plaintiff filed his motion after the deadline for amending the pleadings, the court employs a two-step analysis, first determining whether Plaintiff has shown good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b), then evaluating whether Plaintiff has satisfied the standard for amendment of pleadings under Federal Rule of Civil Procedure 15(a). This court has stated that

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

5

*Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations omitted).

Once Plaintiff has shown good cause for modifying the scheduling order, he must also satisfy the requirements of Rule 15(a) for amending the pleadings.  Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Notably,

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48 (1957).

## ANALYSIS

### 1.    *Motion to Dismiss*

Defendants argue that Plaintiff's Amended Complaint should be dismissed because (1) Plaintiff's breach of contract claim involves interpreting the Collective Bargaining Agreement ("CBA") entered into between Beverage Distributors Company ("BDC") and Teamsters Local 455 ("Union"), and therefore, Plaintiff's claim for breach of contract is preempted by Section 301 of the Labor Management Relations Act ("LMRA"); (2) to the extent Plaintiff is asserting a

6

hybrid Section 301 claim against BDC and Teamsters Local 455 (the "Union"), Plaintiff's breach of contract claim is barred by the applicable statute of limitations; (3) there is no individual liability for Section 301 claims and, as such, Plaintiff's breach of contract claim against the individual defendants must be dismissed; and (4) the Anti-Harassment Policy cannot be the basis of a breach of contract claim.  (*See* Mem.)

a.      ***Breach of Contract Claim is Preempted by the LMRA***

Defendants argue that Plaintiff's breach of contract claim is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which controls disputes over collective bargaining agreements.  That section states, in relevant part: "Suit for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  Congress's power to preempt state law stems from the Supremacy Clause found in Article VI of the United States Constitution.  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985).  The Supreme Court has held that Section 301 not only confers federal jurisdiction over collective bargaining disputes, but also reflects Congress' desire to have a uniform federal interpretation of collective bargaining agreements.  Accordingly, all suits which fall under § 301 must be governed by federal law.  *Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 448, 456 (1957) ("We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."); *Teamsters v. Lucas Flour*, 369 U.S. 95, 103 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the

7

statute."). While state courts have concurrent jurisdiction over § 301 cases, they must apply federal law rather than state law to those disputes. Because federal law exclusively controls in this area, any state law causes of action—whether they sound in tort or contract—which depend on the meaning of a collective bargaining agreement are preempted. *United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990). "State law is thus preempted by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *Id.* at 368.

State law claims are only preempted if they are not "sufficiently independent" of the collective bargaining agreement. *United Steelworkers*, 495 U.S. at 369. The Supreme Court has stated the relevant inquiry in various ways. "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted." *Lingle v. Norge*, 486 U.S. 399, 405–06 (1988). Section 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers Corp.,* 471 U.S. at 212. Citing Supreme Court precedent, the Tenth Circuit has held that a state law claim is preempted by § 301 whenever evaluation of the claim is "inextricably intertwined with consideration of the terms of the labor contract." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1208 (10th Cir. 2001).

Here, Plaintiff alleges the defendants violated Articles 6, 10, 22, 23, and 25 of the CBA. (*See* Am. Compl.) Specifically, Plaintiff alleges that the defendants caused "an avoidable injury" due, in part, by their "failure to insure the company vehicle and its cargo met COOT Safety requirements; which are also required under the Union Contract Article 22 Safety." (*Id.*

8

at 2.)  Plaintiff also alleges he was "forced to perform light duty, and not allowed a single *day* off even after it was requested, in violation of Article 25.  (*Id.* at 3 [emphasis in original].)  Plaintiff alleges the defendants failed to provide adequate breaks, in violation of Article 6.  (*Id.* at 5–6.)  Plaintiff also alleges the defendants violated Article 23 by failing to give him a reason for his termination.  (*Id.* at 7.)  Resolution of Plaintiff's claim that the defendants breached their contract with the Union by failing to comply with the CBA necessarily requires consideration of the CBA.  Thus, Section 301 preempts Plaintiff's breach of contract claim, and that claim properly is dismissed.

### b.        Hybrid Section 301 Claim is Barred by the Statute of Limitations

In his Amended Complaint, Plaintiff asserts that "[t]he Union Reps told Plaintiff to go straight to the Union Hall and file a grievance, so that's what he did."  (Am. Compl. at 7.)  Plaintiff states that "[a]fter a week or so of talks with the Union, Plaintiff decided to file a complaint with the EEOC because the Union refused to offer legal representation, or even conversation with an attorney."  (*Id.*)  Defendants argue that, to the extent Plaintiff is asserting a

hybrid § 301 claim[1], the claim is barred by the applicable statute of limitations.[2]  (Mot. Dismiss at 6–8.)

In a hybrid § 301 action, an employee typically makes claims against both his employer and his union based on an alleged violation of the CBA by the employer and an alleged breach of the duty of fair representation by the union.  *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d at 522, 530 (10th Cir. 1992).  An employee's hybrid claim comprises two causes of action, the first against the employer for breach of the collective-bargaining agreement, and the second against the union for breach of its duty of fair representation.  *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 161 (1983).  An employee may sue the employer or the union; however, the case he must prove is the same whether he sues one, the other, or both.  *Id.*

To preserve hybrid § 301 claims for breach of contract and duty of fair representation, a plaintiff must file suit within six months of when his cause of action accrued.  *DelCostello*, 462 U.S. at 170–72.  The six-month statute of limitations is applicable to both the employer and union defendants.  *Vadino v. A. Valey Engineers*, 903 F.2d 253, 260 (3d Cir. 1990).  The limitations period "begins to run when the employee 'knows or in the exercise of reasonable

---

[1]The court would not construe this vague and conclusory language as asserting a hybrid § 301 claim.  The court also notes that Plaintiff has not asserted <u>any</u> § 301 claim.  (*See* Resp. Mot. Dismiss at 2.)  Nevertheless, the court will address Defendants' argument.

[2]In order for Plaintiff's § 301 claims to be proper, he must either (1) show that he exhausted his administrative remedies or (2) file a § 301 hybrid claim alleging that the Union breached its duty of fair representation.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–65 (1983).  The defendants do not argue that Plaintiff failed to exhaust.

diligence should have known or discovered the acts constituting the union's alleged violations.' " *Edwards v. Int'l Union*, 46 F.3d 1047, 1053 (quoting *Lucas v. Mountain States Telephone & Telegraph*, 909 F.2d 419, 420-21 (10th Cir.1990)).  Factoring in the separate causes of action against the employer and the union, the rule can be stated as " 'the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or should have known of the employer's final action, whichever occurs later.' " *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993) (quoting *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986)).  Here, the employer's last action occurred on December 4, 2009, the day Plaintiff was terminated.  (Am. Compl. at 7.)  Plaintiff withdrew from the grievance process and filed his EEOC Charge of Discrimination on February 1, 2010.[3]  (Doc. No. 1 at 4.)  Thus, Plaintiff knew or should have known no later than February 1, 2010, that the Union would take no further action in pursuing the grievance on behalf of Plaintiff.  Thus, the court finds that the statute of limitations period began to run on February 1, 2010, and expired on August 1, 2010.

Plaintiff makes no argument that the limitations period should be tolled, or extended, or that it should not apply in this case for some other reason.  Nevertheless, "in . . . cases in which the alleged breach of duty arises outside the context of processing a grievance, courts have held

---

[3]*See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001) (en banc); *Martinez v. City & County of Denver*, No. 08–01503, 2010 WL 1380529, at *1 (D. Colo. Mar. 31, 2010) (taking judicial notice of discrimination charges filed with the EEOC).

that accrual of such a claim can be tolled by an employee's good faith attempt to exhaust the

grievance procedures." *Lucas*, 909 F.2d at 421–22.  The limitation period, however, will not be

tolled when the "employee is inexcusably dilatory with regard to the pursuit of his or her

grievance." *Herrera v. Int'l Union, United Auto. Aerospace and Agr. Implement Workers of*

*Am.*, 858 F. Supp. 1529, 1541 (D. Kan.1994) (citation omitted), *aff'd*, 73 F.3d 1056 (10th Cir.

1996).  Taking the allegations in the Amended Complaint as true and construing them in the

light most favorable to the plaintiff, *Hall*, 935 F.2d at 1198, the court finds that because Plaintiff

voluntarily withdrew from the grievance process and filed his EEOC complaint instead, Plaintiff

was not diligent in the pursuit of his grievance.  As a result, the grievance did not serve to toll

the limitations period.

Therefore, Plaintiff's hybrid § 301 claim is barred by the statute of limitations.[4]

### c.      Ant-Discrimination and Harassment Policy Cannot Be the Basis for a Breach of Contract Claim

In his Amended Complaint, Plaintiff alleges he "suffered discrimination and harassment

from Defendant(s) Rogers and Levins" during this time frame in violation of the Anti

Discrimination and Harassment Policy.  (Am. Compl. at 2–3, 4.)  Defendants argue that, to the

extent Plaintiff asserts a breach of contract claim based on the Anti-Discrimination and

Harassment Policy, the claim fails.  (Mot. Dismiss at 8–10.)

---

[4]Because this court has determined the § 301 and hybrid § 301 claims should be
dismissed, it need not address the defendants' argument that the breach of contract claim
asserted against the defendants individually should be dismissed.

In Colorado, "an employee who is hired for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Crawford Rehab. Servs. Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997).  An employer may be held liable for the discharge of an otherwise at-will employee, however, where an implied contract arises out of company policy or employment manuals, or where an employee relies on the policies and manuals to his detriment. *Id.* at 711–12, *applied in Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994).  However, the employer may prevent policies and handbooks from having any contractual effect by issuing a clear and conspicuous disclaimer to that effect. *Anderson v. Regis Corp.*, 185 F. App'x 768, 771 (10th Cir. 2006), citing *Frymire v. Ampex Corp.*, 61 F.3d 757, 769 (10th Cir. 1995).

While the existence of an implied contract is normally a factual inquiry for the jury, *Vasey*, 29 F.3d at 1464 (citing *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 828 (Colo.App.1990)), the issue may be decided as a matter of law if (1) there is a valid disclaimer stating the policies are not intended to create a contract, *see Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517, 1522 (D. Colo. 1987); (2) the alleged promises are nothing more than "vague assurances," *see Vasey*, 29 F.3d at 1464–65; or (3) if the undisputed facts otherwise "indicate[ ] that the employer did not intend the manual to operate as a contractual offer to the employee." *Id.*

Here, the Anti-Discrimination and Harassment policy cannot be the basis of a breach of contract claim because it is part of BDC's employee handbook, which clearly states, in bold

typeface, "**This handbook is not a contract, expressed or implied . . . .**"[5] (*See* Mot. Dismiss, Ex. A at 5 [emphasis in original].)  The handbook acknowledgement also states:

> **I also acknowledge that nothing in the handbook is intended to create a contract of employment or a promise of employment for any period of time, and I understand that employment with the Company is at-will and, as such, may be terminated at will by either me or the Company, at any time and for any lawful reason.**

(*Id.* at 2 [emphasis in original].)

Plaintiff does not dispute that he received and signed this disclaimer, nor does he argue that the disclaimer was in any way unclear, misleading, or subject to any exception.  Rather, Plaintiff states that, "These policies were written as guidelines for employee conduct, and are definitive."  (Resp. Mot. Dismiss at 2.)  The court finds that the language in the Employee Handbook clearly and unambiguously advises that its policies are not intended to create a contract, *see Therrien*, 670 F. Supp. at 1522; (D. Colo. 1987), and that the defendant did not intend the manual to operate as a contractual offer to the plaintiff, *Vasey*, 29 F.3d at 1464–65. Accordingly, such policies cannot amount to a promise enforceable in contract, and Plaintiff's claim that the defendants breached the Anti-Discrimination and Harassment policy should be dismissed.

---

[5]A document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.  *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005). Here, Plaintiff attached a single policy from the Employee Handbook to his Amended Complaint (*see* Am. Compl., Ex. 3 [Doc. No. 34-3]) and refers to those exhibits in his Amended Complaint. Moreover, Plaintiff does not dispute the authenticity of the Employee Handbook attached to Defendant's Motion to Dismiss.  (*See* Doc. No. 45 [Resp. Mot. Dismiss] at 2.)

### 2.   *Motion to Amend*

In his proposed Second Amended Complaint, Plaintiff seeks to additional defendants and new state tort claims.  (*See* Doc No. 67; *see also* Doc. No. 56.)  Defendants argue that the amendments are futile.  (*See* Doc. No. 60 [Resp. Mot. Amend].)

Plaintiff filed his motion to amend approximately two months after the November 23, 2012, deadline for amending pleadings.  (*See* Doc. Nos. 51, 52.)  Plaintiff does not argue there is good cause for an extension under Rule 16(b).  However, Plaintiff, apparently recognizing he has filed the current motion to amend out of time, argues that he "submitted [this motion] in error" and "request[s that] the court accept the November 16, 2012 [motion to amend]" (Doc. No. 77 [Reply Mot. Amend]), which this court previously denied as moot when Plaintiff filed the current motion to amend (Doc. No. 65) and a proposed amended complaint (Doc. No. 67).  (*See* Doc. No. 68).[6]  Plaintiff also asks the court to accept the current motion to amend as a supplement to the previously-denied motion to amend, despite the fact that he filed a proposed amended complaint with the later-filed motion to amend.  (Reply Mot. Amend at 2.)  Even assuming Plaintiff could demonstrate the good cause required for an extension under Rule 16(b),

---

[6]Plaintiff complains that "the court delayed adjudication" of his previously-filed motion to amend "well beyond submission of all required documents."  (Reply Mot. Amend, ¶ 4.)  The court notes the defendants filed their response to that motion to amend on December 12, 2012.  (Doc. No. 65.)  Therefore, Plaintiff's reply would have been due on or before December 31, 2012.  Plaintiff did not file a reply.  However, before this court could issue a recommendation on Plaintiff's previously-filed motion to amend, Plaintiff filed another motion to amend with a new proposed amended complaint—not a motion to supplement his previous motion to amend—on January 22, 2013.  (*See* Doc. Nos. 65, 67.)

the court finds both proposed amended complaints (Doc. Nos. 56 and 67) would be subject to dismissal, and thus the motion to amend is properly denied under Rule 15(a) as futile.

In both proposed amended complaints, Plaintiff seeks to add two additional parties, The Charmer Sunbelt Group and Teamsters Local Union No. 455, and eight additional claims, including material breach of fiduciary duty, theft of wages, harassment, retaliation, wrongful termination, wrongful imprisonment, illegal detention, and malice. (*See* Doc. Nos. 56-1, 67.)

Plaintiff's proposed new tort claims[7] fail because they are time-barred under the same analysis used by Judge Martínez in his June 19, 2012, Order to dismiss the tort claims asserted by Plaintiff in his original Complaint. (*See* Judge Martínez's Order at 7.) In that Order, Judge Martínez explained that, "In Colorado, tort actions have a two-year statute of limitations, and such claims must be brought within two years after the cause of action accrues." (*Id.* at 6 [citing Colo. Rev. Stat. §13-80-102].) A cause of action accrues on the date the injury and its cause are known. *Id.*; *see also* Colo. Rev. Stat. § 13-80-108(1). Defendant BDC terminated Plaintiff's employment on December 4, 2009, "[t]hus, Plaintiff's alleged injury accrued no later than December 4, 2009." (*Id.* at 7.) Judge Martínez therefore held that Plaintiff failed to meet the applicable two-year statute of limitations period and dismissed Plaintiff's tort claims with prejudice. (*Id.*) Here, Plaintiff's newly asserted tort claims also arise from alleged injuries that accrued no later than December 4, 2009, and are therefore also time-barred. Moreover, to the extent Plaintiff seeks to reassert his harassment and retaliation claims under Title VII, Judge

---

[7]Plaintiff asserts eight new tort claims; however only six of them are recognized causes of action. Illegal detention and malice are not tort claims recognized in the state of Colorado.

16

Martínez's June 19, 2012, Order also held that Plaintiff's claims under Title VII are time-barred. (*See* Judge Martínez's Order at 6.)

Plaintiff's breach of contract claim based on the CBA fails for the same reasons as discussed *supra*. Therefore, to the extent Plaintiff wishes to include that claim in his proposed amended complaint, the claim is futile. Finally, Plaintiff has failed to state a claim against "The Charmer Sunbelt Group." The proposed complaint lists The Charmer Sunbelt Group as a party and alleges that it is BDC's corporate parent. Defendants state they "are aware of no legal entity with that name—it is merely a trade name." (Resp. Mot. Amend at 5.) Regardless, there is no basis for liability against any corporate parent of BDC. The proposed amended complaint does not assert any claims against Charmer-Sunbelt or allege any other facts against Charmer-Sunbelt. (*See* Doc. No. 56-1; *see also* Doc. No. 67, Attach. No. 1 at 2, 3.) Instead, Plaintiff merely demands relief from Charmer-Sunbelt to the tune of approximately 16.6 million dollars. (*See* Doc. No. 67 at 5–9.)

Therefore, Plaintiff's Motion to Amend is properly denied.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 42) be **GRANTED** and that this case be dismissed in its entirety, with prejudice. The court further

**RECOMMENDS** that "Plaintiff's Motion to Amend Original Complaint Pursuant to Fed. R. Civ. P. 15(a)(2)" (Doc. No. 65) be **DENIED**. The court further

17

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

18

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

       Dated this 14th day of February, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

19